**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
In Re HealthSouth Securities Litigation   )    Master File No. CV-03-BE-1500S
                                          )    U.S. District Court for the N.D. Al.
_____)
                                          )
STEPTOE & JOHNSON LLP                     )
1330 Connecticut Ave. N.W.                )
Washington, D.C.  20036                   )
                                          )
              Movant,                     )
                                          )
v.                                        )    **Misc. No. _____**
                                          )
UBS AG, UBS SECURITIES LLC,               )
BENJAMIN D. LORELLO, WILLIAM              )
McGAHAN, and HOWARD CAPEK                 )
                                          )
              Respondents.                )
_____)

**MOTION TO QUASH SUBPOENA FOR ATTORNEY INTERVIEW MEMORANDA**

Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii), Steptoe & Johnson LLP

("Steptoe"), through the undersigned counsel, respectfully moves to quash a certain subpoena

issued by UBS AG, UBS Securities LLC, Benjamin D. Lorello, William McGahan, and Howard

Capek (collectively, "UBS" or the "UBS Respondents") to the extent that the subpoena seeks to

compel the production of attorney memoranda regarding interviews of Steptoe's client, Michael

D. Martin, by government agents.  On behalf of itself and its client Mr. Martin, Steptoe asserts

the attorney memoranda are opinion work product protected from disclosure under *Hickman v.*

*Taylor*, 329 U.S. 495, 511-13 (1947) and its progeny, and Rule 26(b)(3) of the Federal Rules of

Civil Procedure.

The subpoena is attached as Exhibit A.  A supporting declaration by Steptoe attorney

John J. Kavanagh III is attached as Exhibit B.  A proposed order is attached as Ex. C.

- 1-

Steptoe has consulted with counsel for the UBS Respondents, who declined to consent to the relief sought here. Steptoe respectfully requests oral argument on the motion.

## STATEMENT OF FACTS

Beginning in March 2003, Steptoe represented Michael D. Martin, a former Chief Financial Officer of HealthSouth Corporation, in responding to the United States' criminal and civil investigations into the inflation of corporate earnings at HealthSouth. Steptoe also represented Mr. Martin in related civil lawsuits brought by HealthSouth's investors. Kavanagh Decl. ¶ 3.

With Steptoe's counsel and representation, Mr. Martin entered into a plea and cooperation agreement with the government, under which he agreed to assist the government's investigation and prosecution in connection with the HealthSouth matter. Kavanagh Decl. ¶ 5; *see United States v. Martin*, 455 F.3d 1227, 1231-34 (11th Cir. 2006) (describing plea and cooperation).

As part of his cooperation, Mr. Martin was extensively debriefed by representatives of the FBI, the SEC, the U.S. Department of Justice, and two United States Attorneys' Offices. Mr. Martin was represented at these interviews by Steptoe attorneys including at various times Robert Fleishman, Mark Hulkower, and John Kavanagh. Kavanagh Decl. ¶¶ 6-7, 11.

The third-party civil subpoena in dispute here was issued by counsel for the UBS Respondents in civil litigation arising out of the HealthSouth earnings inflation matter. *In re HealthSouth Securities Litigation*, Master File No. CV-03-BE-1500S (N.D. Ala., S'ern Div.). Steptoe & Johnson LLP is not a party to that litigation.

Through the instant third-party subpoena, UBS seeks to compel Steptoe to produce, among other things, two memoranda written by Steptoe attorney John Kavanagh summarizing government interviews of Mr. Martin on May 2, 2003 and February 9, 2004.[1] At the time of

---

[1] The document request attached to UBS' subpoena demands production of:

    6. Any documents relating to an interview of Martin on or about May 2, 2003, by the Federal Bureau of Investigation, including, but not limited to, any notes made by You or any

(Continued …)

each interview, Steptoe represented Mr. Martin: (a) in his criminal case, which was still awaiting

sentencing; (b) in the SEC's investigation and anticipated civil suit; and (c) in connection with

anticipated civil lawsuits brought by HealthSouth's investors.   Kavanagh Decl. ¶¶ 12-14.[2]

　　　Because the subpoena is directed to Steptoe, a law firm, and the document request defines

"You" to "mean[] Steptoe & Johnson LLP or any successor, attorney, ... or other person(s) pur-

porting to act on its behalf," Ex. A, Doc. Req. at 4, UBS plainly knows and intends that it is re-

questing attorney notes or memoranda of the interviews.   UBS' intent to subpoena attorney

memoranda is further reflected in its instruction that "15. To the extent documents responsive to

Requests 6 or 7 below include the personal thoughts or impressions of an attorney, those portions

of the notes may be redacted and reflected on a privilege log."  Ex. A, Doc. Req. at 8.

---

other Person concerning any statements made at that interview relating to any of the UBS Defendants.

7.  Any documents relating to an interview of Martin on or about February 9, 2004 to February 13, 2004, by the Federal Bureau of Investigation, including, but not limited to, any notes made by You or any other Person concerning any statements made at that interview relating to any of the UBS Defendants.

Kavanagh Decl. Ex. A, at 9.  Steptoe possesses two documents responsive to these requests: attorney Kavanagh's memoranda regarding the interviews.  Kavanagh Decl. ¶¶ 11, 19.

　　　For the May 2, 2003 interview, Mr. Kavanagh wrote an 18-page memorandum addressed to the File, Bob Fleishman, Mark Hulkower, and John Cooper, titled, "Michael Martin/Healthsouth-May 2 Meeting with AUSA, DOJ, and FBI."  Messrs. Fleishman and Hulkower are attorneys at Steptoe & Johnson; Mr. Cooper is an attorney at the Birmingham, Alabama firm of Sirote & Permutt.  All of these attorneys represented Mr. Martin in the government's investigation.  The memorandum is headed in bold, "CONFIDENTIAL—ATTORNEY WORK PRODUCT / DRAFT."  Because of an auto-updating function of Microsoft Word, the original date of the memorandum has been lost, but the memorandum states in its first sentence that it "reports on the May 2, 2003 meeting between Michael Martin (MM) and government officials regarding financial fraud at Healthsouth."  Kavanagh Decl. ¶ 16.

　　　For the February 9, 2004 interview with the SEC, FBI, and USAO, Mr. Kavanagh wrote a 15 page memorandum, addressed to Messrs. Hulkower, Fleishman, and Cooper, titled, "Notes of Meeting with SEC on Monday February 9, 2004 in Birmingham."  This memorandum, dated March 5, 2004, is headed, "DRAFT / Privileged and Confidential / Attorney Work Product."  After reciting the date, participants, and subject matter of the interview, the first paragraph of the memo states, "This is not a verbatim transcript, but, rather, a summary of the interview."  Kavanagh Decl. ¶ 17.

　　　[2] Mr. Martin was also represented in these matters by the Birmingham, Alabama law firm of Sirote & Permutt, with which the Steptoe attorneys worked closely.  Kavanagh Decl. ¶ 4.

Steptoe, on behalf of itself and pursuant to its former client's direction, now moves to quash the subpoena insofar as it seeks attorney memoranda regarding government interviews of Steptoe's then-client.  The responsive attorney memoranda are protected opinion work product.

## POINTS AND AUTHORITIES

"Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."  *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

Here, UBS's subpoena requests 6 and 7 expressly seek to compel the production of Steptoe attorneys' memoranda regarding the government's interviews of their client.  Because attorney notes of client or witness interviews are core opinion work product, protected from disclosure under the work product doctrine and Federal Rule of Civil Procedure 26(b)(3), these subpoena requests should be quashed.

### 1.    Attorney Memoranda of Witnesses' Oral Statements Are Protected Opinion Work Product

In *Hickman v. Taylor*, the seminal decision regarding the work product doctrine, the Supreme Court explained the necessity for protecting the privacy of attorneys' work papers.  The Court rejected "an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties."  329 U.S. at 510; *accord Upjohn Co. v. United States*, 449 U.S. 383, 397 (1981).  In light of UBS's current unsupported effort to compel Steptoe to produce attorney memoranda created during representation of a client in litigation, the basic principles of *Hickman* bear repeating here:

> In performing his various duties, ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference....  This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal

> beliefs, and countless other tangible and intangible ways—aptly though roughly termed ... the 'work product of the lawyer.'  Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served.

*Hickman*, 329 U.S. at 511; *accord In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998).

To protect lawyers' zone of privacy in preparing their clients' defense, the Supreme Court held that work product of the lawyer could not be discovered through mere "naked, general demand" such as that made by UBS here.  *Hickman*, 329 U.S. at 512.  Instead,

> the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.

*Id.*  Thus, to obtain work product in discovery, the seeking party must establish a substantial need for the materials to prepare its case, plus an inability, without undue hardship, to obtain the substantial equivalent of the information by other means.  Fed. R. Civ. P. 26(b)(3)(A)(ii) (codifying work product doctrine for written trial preparation materials, *see Upjohn*, 449 U.S. at 398).  *Even on such a showing* (which, as discussed below, UBS cannot show here), a party may obtain only nonprivileged material *facts*.  *Hickman*, 329 U.S. at 511.  It is still precluded from compelling production of opinion work product—the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).  Such "opinion work product ... is virtually undiscoverable."  *Director, Office of Thrift Supervision v. Vinson & Elkins LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997).

The attorney memoranda sought in UBS' subpoena requests 6 and 7, which recorded a Steptoe attorney's recollections and impressions of his client's oral statements, are, in their entirety, opinion work product, which receives the highest protection.  The Supreme Court has held

that the substantial-need-plus-hardship exception that would justify producing fact work product does *not* apply "to oral statements made by witnesses ... whether presently in the form of the attorney's mental impressions *or memoranda*." *Upjohn*, 449 U.S. at 399 (quoting *Hickman*) (emphasis added, alteration marks omitted). "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes," including "what he saw fit to write down regarding [the] witnesses' remarks." *Id.* (quoting *Hickman*) (internal quotation marks omitted). As Justice Jackson explained in *Hickman*, attorney notes of witness statements *inevitably* will reflect the attorney's mental impressions: "Even if his recollection were perfect," an attorney's written account of what a witness said "would be his [the attorney's] language, permeated with his inferences." *Hickman*, 329 U.S. at 516-17 (Jackson, J., concurring). Because attorney interview memoranda inevitably reflect the attorney's thought processes, they are entitled to the highest degree of protection. *Upjohn*, 449 U.S. at 401-02. Indeed, Rule 26's drafters noted that attorney interview memoranda are among the materials that receive heightened protection, to avoid disclosing lawyers' mental impressions and legal theories. *Id.* at 400 (discussing Rule 26 advisory committee notes).[3]

---

[3] *Accord United States v. Paxson*, 861 F.2d 730, 735-36 (D.C. Cir. 1988) (attorney's notes of client's interview with government agents were opinion work product, protected under *Hickman* and *Upjohn*); *In re Sealed Case*, 676 F.2d 793, 805, 809-10 (D.C. Cir. 1982) (in-house counsel's notes and memoranda regarding internal investigation, including meetings with witnesses, were "precisely the sort of 'memoranda, ... mental impressions,' and 'thoughts, heretofore inviolate' for which the *Hickman* doctrine was fashioned") (quoting *Hickman*); *Alexander v. FBI*, 198 F.R.D. 306, 313-14, 319 (D.D.C. 2000) (attorney notes regarding interviews of their clients or other witnesses are opinion work product, entitled to the highest protection); *see also In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988) (SEC attorney's recollection of witnesses' oral statements was opinion work product for which mere showing of "substantial need" and "undue hardship" would not suffice to compel disclosure).

In *Vinson & Elkins*, 124 F.3d 1304, the D.C. Circuit suggested without deciding that in certain circumstances some purely factual information contained in attorney notes might be segregable and disclosable on a sufficient showing of necessity. *Id.* at 1307-08. The court relied on *In re Sealed Case*, 124 F.3d 230 (D.C. Cir. 1997), which noted a distinction between attorney interview notes created in litigation-related investigations (for which opinion work product protection would apply) and preliminary interview notes created at the client's behest (which could be segregable as to facts contained therein). *Sealed Case*, 124 F.3d at 236 (distinguishing *Paxson*, 861 F.2d at 735-36, *In re Sealed Case*, 856 F.2d at

(Continued …)

In both *Hickman* and *Upjohn*, the Supreme Court held that there was no showing of ne-

cessity that could be made in those cases that would justify compelling an attorney to produce his

written account of witnesses' interview statements. *Hickman*, 329 U.S. at 512; *Upjohn*, 449 U.S.

at 401-02. Similarly, in *United States v. Paxson*, 861 F.2d 730 (D.C. Cir. 1988), the D.C. Circuit

held that attorney notes of a client's interview with government agents were opinion work prod-

uct, *id.* at 735, and that to compel their disclosure would require "a far stronger showing" than

the ordinary showing of substantial need and inability to obtain the equivalent without undue

hardship, which was held insufficient in *Upjohn*. *Paxson*, 861 F.2d at 736 (quoting *Upjohn*, 449

U.S. at 402; *see Upjohn*, 449 U.S. at 401). Thus, it is only in the rare and truly extraordinary

case that a court will order attorney memoranda of witnesses' oral statements produced. *See In

re Sealed Case*, 676 F.2d 793, 809-10 (D.C. Cir. 1982); *Alexander v. FBI*, 198 F.R.D. 306, 314

(D.D.C. 2000). No such extraordinary showing could possibly be made here.

2.   **UBS Cannot Show Any Necessity For The Memoranda Or Inability to Obtain Their Equivalent, Because UBS Already Has Access to Mr. Martin's Prior Sworn Testimony, the FBI's 302's of the Interview, and FBI Sworn Testimony About the Interview**

As discussed above, the showing required to obtain production of fact work product—a

showing of substantial need plus inability to obtain the material's equivalent without substantial

hardship—does not apply to opinion work product, which enjoys much stronger protection. The

attorney memoranda sought in Requests 6 and 7 are opinion work product in their entirety. Even

---

273, and *Better Gov. Bur., Inc. v. McGraw (In re Allen)*, 106 F.3d 582, 607-08 (4th Cir. 1997)). *Sealed Case*, 124 F.3d 230, however, was reversed on other grounds by *Swidler & Berlin v. United States*, 524 U.S. 399 (U.S. 1998), and on remand the D.C. Circuit affirmed the district court's original order, which upheld work product protection for the attorney notes at issue. *In re Sealed Case*, 172 F.3d 931 (Table), 1998 WL 704526 (D.C. Cir. Aug. 20, 1998); *see Sealed Case*, 124 F.3d at 231 (describing district court's original relief). Thus, it is not clear that *Sealed Case*'s proposition regarding sifting fact work product from opinion work product, 124 F.3d at 236-37, is still good law. But even under the distinction observed in *Sealed Case*, the attorney memoranda here—which unquestionably were created during litigation and focused on the matters being litigated—would qualify as opinion work product. *See* 124 F.3d at 236.

if there were any purely fact work product sought by the subpoena, however, UBS cannot show need for the memoranda it seeks or the inability to obtain their equivalent elsewhere, because the facts covered and the statements made at the interviews have been the subject of extensive sworn testimony in prior proceedings, and are further recorded in FBI memoranda of the same interviews (FBI Form "302's").

As an initial matter, UBS mistakenly supposes that the only information that may be kept from disclosure are attorney mental impressions. The instructions that accompany the document subpoena indicate that Steptoe may redact from its memoranda any attorney thoughts or mental impressions.[4] This instruction overlooks two important points. First, as discussed in Section 1 above, the *entirety* of the attorney memoranda sought reflect the attorney's thoughts and mental impressions. Additionally, the instruction mistakenly supposes that if opinion work product is redacted, Steptoe may be compelled to produce any factual statements remaining. The work product doctrine, however, protects both fact and opinion work product from disclosure. If a document is prepared in anticipation of litigation, as Steptoe's attorney memoranda plainly were, then the entirety of the document—"not just the portions concerning opinions, legal theories, and the like[—]is protected by the work product doctrine." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). "The point of the rule is that while all materials prepared in anticipation of litigation are work product and protected from discovery by other parties, a sufficient showing of need may overcome that protection with respect to factual materials, but not with respect to deliberative materials. This does not mean that factual materials are not work product; it means

---

[4] Instruction 15 states, "To the extent documents responsive to Requests 6 or 7 below include the personal thoughts or impressions of an attorney, those portions of the notes may be redacted and reflected on a privilege log." Kavanagh Decl. Ex. A, Doc. Req. at 8. UBS also seeks only those memoranda contents that relate to UBS. Instr. 16, *id.*

only that they receive a lower degree of protection under the Federal Rules than deliberative work product." *Id.* at 620 n.11.

Thus, even if the document subpoena here sought only purely factual information set out in Steptoe's attorney memoranda (an impossibility under *Hickman* and *Upjohn*), UBS could still obtain those portions of the memoranda only if it could show a substantial need for them to prepare its case, plus the inability to obtain the information elsewhere without undue hardship. UBS cannot make that showing here, because it has many sources from which it may obtain (or already has obtained) a full account of Mr. Martin's statements at the May 2, 2003 and February 9, 2004 interviews.

*First*, Mr. Martin has testified extensively about the subjects covered in those interviews during the two criminal trials of former HealthSouth CEO Richard Scrushy. Transcripts of Mr. Martin's testimony are readily available. *Second*, Mr. Martin's interview statements were memorialized not only by his own counsel, but also by FBI agents who attended the interviews. Those FBI memoranda—the Form 302's—are in the possession of UBS. *Third*, during Mr. Martin's five-day deposition in February 2008, UBS examined Mr. Martin in detail about his statements in these interviews, and probed alleged inconsistencies between Mr. Martin's current recollection of his statements and the account of those statements contained in the 302's. *Fourth,* UBS is able to subpoena the testimony of any of the many government agents who attended the interviews. Indeed, at least one such agent, FBI Agent Jerry Kelly, has already testified in Mr. Scrushy's criminal trials regarding Mr. Martin's interview statements. Both the facts about which Mr. Martin spoke and the actual statements made by Mr. Martin in the interviews have been well covered in sources that are available to UBS.

UBS thus does not seek discovery of any new or unavailable information. Instead, it seeks only to confirm from Mr. Martin's lawyers what it already knows from other sources. This

sort of corroboration from a witness's counsel, where the seeking party already has other sources for the information, is precisely the kind of unjustified invasion of attorney privacy that was rejected in *Hickman*. *See* 329 U.S. at 508-10, 513. Where, as here, the party seeking to compel disclosure already possesses other notes of the interview taken by government lawyers or agents, and seeks the witness's attorney's notes only as additional corroboration, the D.C. Circuit has upheld work product protection, and rejected any argument of substantial need or inability to obtain the information elsewhere. *Vinson & Elkins*, 124 F.3d at 1308. Similarly, where, as here, the seeking party has already examined the witness extensively about alleged inconsistencies with his prior interview statements, using "whatever source he may have obtained" regarding that interview, the D.C. Circuit has held that the "strong showing" required to pierce work product protection is lacking. *Paxson*, 861 F.2d at 736.

Again, even if UBS could show substantial need plus hardship, that showing could justify only the production of fact work product, not opinion work product. UBS cannot make any such showing here, and the attorney memoranda it seeks are, by their very nature, opinion work product in their entirety. The fact that UBS has alternative sources available to it to learn the entirety of what was said during the interviews only underscores the lack of justification for attempting to compel production of any work product at all with respect to these interviews, much less attorney interview memoranda, which are opinion work product given the highest level of protection.

## CONCLUSION

For the foregoing reasons, this Court should quash the UBS subpoena insofar as it seeks attorney memoranda regarding interview statements made by Mr. Martin.

Respectfully submitted,


   /s/ Bruce C. Bishop
Mark J. Hulkower, No. 400463
Bruce C. Bishop, No. 437225
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, D.C. 20036
(202) 429-3000

*Counsel for Movant Steptoe & Johnson LLP*

Dated: March 6, 2008

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on this 6th day of March, 2008, a copy of the foregoing Motion to Quash Subpoena for Attorney Interview Memoranda was served by hand and electronic mail on:

                 Julia M. Jordan, Esq.
                 Sullivan & Cromwell LLP
                 1701 Pennsylvania Ave NW
                 Washington DC 20006

                      /s/  Bruce C. Bishop_____

Exhibit A
Subpoena

FILED

2008 Feb-21  PM 05:08
U.S. DISTRICT COURT
N.D OF ALABAMA

~AO88. (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

### SUBPOENA IN A CIVIL CASE

In re HealthSouth Securities Litigation

Case Number:[1]  Master File No. CV-03-BE-1500S

TO:  Steptoe & Johnson LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Document requests are attached as Exhibit 1.

| PLACE    OFFICE OF Julia M. Jordan; Sullivan & Cromwell LLP; 1701 Pennsylvania Ave., NW; Washington, D.C. 20006 | DATE AND TIME 3/6/2008 5:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 2/21/08 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Julia M. Jordan; Sullivan & Cromwell LLP; 1701 Pennsylvania Ave., NW; Washington, D.C. 20006
(202) 956-7500

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 2/21/2008 | Steptoe & Johnson LLP |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| _James, (Receiving Department)_ | Hand Delivery |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| _Patrick Thomas_ | _Evening Courier_ |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _2/21/8_
DATE

_[signature]_
SIGNATURE OF SERVER

_1701 Penn. Ave Washington DC 2000_
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT 1

## SCHEDULE A

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, please produce the documents described herein, consistent with the Definitions and Instructions below, at the place, date, and time specified in the attached Subpoena.

## DEFINITIONS

1.    The terms "Case" or "Litigation" refer to *In re HealthSouth Securities Litigation*, Consolidated Case No. CV-03-BE-1500-S, pending in the United States District Court for the Northern District of Alabama, including *In re HealthSouth Stockholder Litigation*, Consolidated Case No. CV-03-BE-1501-S ("HealthSouth Stockholder Litigation") and *In re HealthSouth Bondholder Litigation*, Consolidated Case No. CV-03-BE-1502-S ("HealthSouth Bondholder Litigation"), and *Wade Tucker* v. *Richard M Scrushy, et al.*, No. CV-02-5212 ("Derivative Action"), pending in the Circuit Court of Jefferson County, Alabama.

2.    The term "communicate" or "communication" refers to every manner or means of disclosure, transfer, or exchange of information orally or in writing.

3.    "Concerning" means relating to, referring to, describing, evidencing, or constituting.

4.    The term "document" as used herein includes electronically stored information (as defined below) and is synonymous in meaning and usage to the broadest scope of the term used in Rule 34 of the Federal Rules of Civil Procedure, as effective December 1, 2006, and includes without limitation any writings, drawings, graphs, charts, photographs, sound recordings, images, handwritten notes, business diaries, calendars, graphics, data and any other data or data compilations stored in any medium from which information can be obtained, translated if

necessary into reasonably useable form, or any other transmittal of information, whether an original, a draft or a copy, whether stored in hard copy, electronically or digitally, including correspondence, electronic mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes or memoranda relating to written or oral communications, including any translations, and drafts and all copies bearing notations and marks not found on the original.

5.    The term "electronically stored information" means any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting, of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, presentation documents, animations, images, audio, video, and audiovisual recordings, voice mail, electronic mail or "e-mail," operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, and file layouts or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file or file fragment.  "Electronically stored information" also includes, without limitation, any items that are stored, or can be restored, on databases, networks, laptops, personal computers, internet data, personal digital assistants, handheld wireless devices, mobile telephones, audio systems, including voicemail, computer systems memory or memories, hard disks, floppy disks, zip drives, CD-ROM discs, Bernoulli

Boxes or their equivalents, magnetic tapes of any type or kind, microfiche, punched cards, punched tape, cartridges, computer chips, (including, without limitation, EPROM, PROM, ROM or RAM of any kind), servers, archives, back-up or disaster recovery systems; or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device, associated with each original and each copy that is in the possession of You or a third party under Your control.

6.    "HealthSouth" as used herein means HealthSouth Corporation, and any of its predecessors, successors, subsidiaries, divisions, partnerships, limited partnerships, related parties, joint ventures, special purpose entities, or affiliates, and any former or present owners, officers, directors, employees, agents, representatives or members of the Board of Directors of HealthSouth, its attorneys, accountants, advisors, and all other persons acting or purporting to act on its behalf.

7.    The term "HealthSouth's Counsel" as used herein means each of Bradley Arant Rose & White LLP; Skadden, Arps, Slate, Meagher & Flom; Haskell, Slaughter, Young & Rediker or any of them, including their predecessors, successors, representatives, employees, attorneys, or members, representing Plaintiffs in this Action.

8.    "Martin" means Michael D. Martin and any attorney, accountant, representative or other Person acting on his behalf.

9.    "Person" or "Persons" refers to natural persons, proprietorships, governmental agencies, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other entities.

10.    The term "Plaintiffs" as used herein means any and all plaintiffs in the HealthSouth Stockholder Litigation, the HealthSouth Bondholder Litigation and the Derivative

-3-

Action, and each of their counsel, or any of them, including their predecessors, successors, representatives, employees, attorneys, or members, representing Plaintiffs in this Action.

11.    The term "Plaintiffs' Counsel" as used herein means each of Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP; Labaton, Sucharow & Rudoff LLP; Whatley Drake LLC; Riley & Jackson, P.C.; O'Donoghue & O'Donoghue LLP; Ciccarello Del Giudice & Lafon; Bernstein, Litowitz, Berger & Grossmann LLP; Cunningham, Bounds, Crowder, Brown & Breedlove; Donaldson & Guin LLC; Galloway & Somerville, LLC; Gregory Law Firm, P.C.; Hare, Wynn, Newell & Newton, LLP; Frank DiPrima, Esq.; Shapiro, Haber & Urmy LLP; Scott & Scott LLC; Schubert & Reed LLP; Prickett, Jones & Elliot; or any of them, including their predecessors, successors, representatives, employees, attorneys, or members, representing Plaintiffs in this Action.

12.    "Settlement Documents" means all documents (a) prepared for the purpose of actual or potential settlement or compromise of actual or potential civil or criminal litigation, or (b) used in connection with discussions concerning any such actual or potential settlement or compromise.

13.    "UBS Defendants" or "UBS" as used herein means UBS AG, UBS Securities LLC (formerly UBS Warburg LLC), Benjamin D. Lorello, William C. McGahan and Howard Capek; or any of them, including any current and former parents, subsidiaries, affiliates, predecessors, directors, officers, and employees of any one of them.

14.    "You" or "Your" as used herein means Steptoe & Johnson LLP or any successor, attorney, accountant, representative, or other person(s) purporting to act on its behalf.

## INSTRUCTIONS

1.      Your response to this subpoena shall include all documents in Your possession, custody, or control. A document shall be deemed to be within Your control if You have the right to secure the document or a copy of the document from another person having possession or custody of the document.

2.      In the event that any document is not produced by reason of a claim of privilege, for each such document, identify: (i) the nature of the privilege being claimed; (ii) the title (if any) and subject matter of the document; (iii) the date of the document; (iv) the location in which it was found; (v) the names and identities of the document's author(s) and all recipients; and (vi) any additional information necessary to permit the parties to assess the applicability of privilege or protection, as required by Fed. R. Civ. P. 26(b)(5).

3.      If any portion of any document responsive to the Requests for Production below is withheld under a claim of privilege pursuant to Instruction No. 2, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted and every redaction shall be recorded on a redaction log.

4.      You are to produce each document requested herein in its entirety, along with any attachments, drafts, and non-identical copies, including without limitation copies that differ by virtue of handwritten notes or any other markings.

5.      If any document was at one time in existence, but has since been lost, discarded or destroyed, identify each such document by date, type, and subject matter, describe the circumstances under which the document was lost, discarded, or destroyed, and identify the person with knowledge of its subject matter and of the circumstances under which it was lost, discarded, or destroyed.

-5-

6.    If a document is withheld from production, or is no longer in existence, as in Instruction Nos. 2 or 5 above, identify each such document by date, subject matter, and the basis for withholding or excluding the document on a log.

7.    If there are no documents responsive to any particular request, You shall state so in writing.

8.    All documents are to be produced for inspection as they are kept in the usual course of business so that the UBS Defendants can ascertain the files in which they were located, their relative order in such files and how such files were maintained and to the extent possible, the documents are to be labeled and numbered to correspond with the paragraphs and subparts in the requests.

9.    No paragraph of this subpoena is to be construed with reference to any other paragraph for purposes of limitation.

10.    Unless otherwise indicated, all requests herein refer to the period from January 1, 1997 through the date of Your responses hereto.

11.    These Requests for Production are continuing requests, and to the extent that at any time after the production of documents called for by the Requests for Production, You become aware of or acquire additional documents responsive to the Requests for Production, such documents shall be produced promptly pursuant to Fed. R. Civ. P. 26(e).

12.    As necessary to bring within the scope of this subpoena all responses that might otherwise be construed to be outside its scope, in construing the Requests for Production below (the "Requests"), (a) the singular includes the plural and the plural shall include the singular; (b) the masculine, feminine or neuter pronoun shall not exclude the other gender; (c) the connectives "and" and "or" are to be construed either disjunctively or conjunctively; (d) the term "all"

-6-

includes and encompasses the words "each" and "any"; and (e) the use of any verb in any tense will be construed as the use of that verb in all other tenses.

13.     Provide the requested documents in hard copy when they are kept in hard copy in the usual course of business.  Provide electronically stored information and documents in standard Group IV TIFF format with accompanying text extraction in a Concordance and Opticon 8.1.1 load file.  To the extent one form of a document is produced, it need not be produced in another form, however, UBS reserves the right to request native files for those documents or data types that are unreadable or have limited accessibility (e.g., MS Excel, PowerPoint or database) in the Group IV TIFF format.  Produce audio and audio visual files in their native formats.  Produce the metadata associated with the responsive data for the following fields as appropriate to the respective file type:  author, recipient(s), blind copy (BCC), file creation date, file modification date, access date, last saved by, file path and folder information. Data from proprietary or customized applications should include the software necessary to access, retrieve, read, and interpret the electronic information, and identify how the electronic information is organized and where it is stored.

14.     The law of the case is that Settlement Documents are discoverable pursuant to Rule 26 of the Federal Rules of Civil Procedure, even if such documents might not be admissible pursuant to Rule 408 of the Federal Rules of Civil Procedure.  (*See In re HealthSouth Corp. Sec. Litig.*, Docket No. 878, slip op., at 9-10 (N.D. Ala. Aug. 17, 2007) (attached hereto as Exhibit A).)  Although You may redact direct references in Settlement Documents to settlement offers, You must produce factual matters contained in Settlement Documents to the extent called for by the Requests.  (*Id.*)

-7-

15.    To the extent documents responsive to Requests 6 or 7 below include the personal thoughts or impressions of an attorney, those portions of the notes may be redacted and reflected on a privilege log.

16.    To the extent documents responsive to Requests 6 or 7 below contain information that does not relate to UBS, such information may be redacted.

## REQUESTS FOR PRODUCTION

1.    All communications and documents exchanged (including, but not limited to, Settlement Documents) between You or Martin on the one hand, and Plaintiffs, Plaintiffs' Counsel, HealthSouth and HealthSouth's Counsel, or any of them, on the other hand.

2.    To the extent not requested in Request No. 1 above, all Settlement Documents exchanged between You or Martin on the one hand, and any other Person.

3.    All documents (including, but not limited to, Settlement Documents) concerning any promise, understanding, or agreement between You or Martin on the one hand, and Plaintiffs, Plaintiffs' Counsel, HealthSouth and HealthSouth's Counsel, or any of them, on the other hand, concerning the settlement, dismissal, or compromise of any part of the Litigations.

4.    All documents (including, but not limited to, all Settlement Documents) received from or sent to any federal or state government agency (including the Federal Bureau of Investigation, the United States Department of Justice, the United States Securities and Exchange Commission and the United States Attorney's Office for the Northern District of Alabama) concerning Martin, HealthSouth or these Litigations, including, but not limited to, any

-8-

documents received pursuant to any request made under the Freedom of Information Act, Alabama's Open Records Act, or any similar or analogous law of any state or other jurisdiction, or subpoena.

5.    All communications and documents exchanged (including, but not limited to, Settlement Documents) between You or Martin on the one hand, and any representative of any governmental entity (including the Federal Bureau of Investigation, the United States Department of Justice, the United States Securities and Exchange Commission and the United States Attorney's Office for the Northern District of Alabama) on the other hand, concerning any actual or potential criminal prosecution of Michael Martin.

6.    Any documents relating to an interview of Martin on or about May 2, 2003, by the Federal Bureau of Investigation, including, but not limited to, any notes made by You or any other Person concerning any statements made at that interview relating to any of the UBS Defendants.

7.    Any documents relating to an interview of Martin on or about February 9, 2004 to February 13, 2004, by the Federal Bureau of Investigation, including, but not limited to, any notes made by You or any other Person concerning any statements made at that interview relating to any of the UBS Defendants.

# EXHIBIT A

Case 1:08-mc-00116-JDB    Document 1-2    Filed 03/06/2008    Page 15 of 24
Case 2:03-cv-01500-KOB-TMP    Document 1141-2    Filed 02/21/2008    Page 14 of 23

FILED
2008-02-17 AM 11:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re HEALTHSOUTH CORPORATION          )
SECURITIES LITIGATION,                 )
                                       )    Master File No.     CV-03-BE-1500-S
                                       )    Consolidated Cases  CV-03-BE-1501-S
                                       )                        CV-03-BE-1502-S

## DISCOVERY ORDER NO. 3

Before the court is the motion to compel (Doc. 781) filed by the UBS defendants on June 15,

2007, which now has been fully briefed. (See Docs. 789, 793, and 802). At issue in the motion is

the UBS defendants' request that HealthSouth and the plaintiff classes produce all documents and

materials exchanged by them, or disclosed to other people or parties, during their settlement

negotiations. The UBS defendants contend that, like their Wells submissions to the SEC, required

by the court to be produced to plaintiffs, these materials are not privileged from discovery. Sauce

is sauce, they say. HealthSouth and the plaintiffs respond that materials they exchanged during

settlement negotiations are not like Wells submissions and are shielded from discovery under either

a "settlement privilege" or FRE 408.

At the outset, it is important to understand what is *not* at stake in the UBS defendants'

discovery request. Just as they were allowed to redact actual settlement offers contained in their

Wells submissions, they do not seek actual settlement offers made or exchanged between plaintiffs,

HealthSouth, and others. Likewise, they agree that they "do not seek HealthSouth's or Plaintiffs'

internal 'draft settlement agreements' or communications with their own counsel that might properly

be protected from disclosure by the attorney-client privilege or work product doctrines." (See Doc.

781, pp. 9-10). Further, it is important to note that plaintiffs and HealthSouth both maintain that they

have *not* reached a "settlement" with the so-called "pleading defendants." Although this alone does not preclude the possibility that they have engaged in FRE 408 settlement negotiations with one or more of them, it reduces the possibility that any "settlement privilege" that might exist actually protects disclosures made to or received from them in their discussions with the "pleading defendants."

With these limitations, what do the UBS defendants seek? Given the plaintiffs' and HealthSouth's refusal to comply with FRCP 26(b)(5)(A)[1] by producing a privilege log or an explicit statement of what is being withheld, it is difficult to assess the claims of the parties in the abstract. However, in a letter dated June 6, 2007, counsel for the UBS defendants demanded, "all of the communications between or among Plaintiffs, HealthSouth, any current or former party to these actions, and any government agency regarding the potential for 'prosecution or litigation' relating to HealthSouth or the settlement of any such prosecution or litigation, other than "actual settlement offers, ...." In essence, the UBS defendants want HealthSouth and the plaintiff classes to produce any communications and disclosures by and between themselves, or with government agencies, or with anyone else reflecting the *facts and evidence* relating to the fraud at HealthSouth. Put another way, to the extent that HealthSouth or plaintiffs communicated to some other person or entity, even as part of potential settlement discussions, a view or understanding of the *facts and evidence*

---

[1] "When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and *shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that,* without revealing information itself privileged or protected, *will enable other parties to assess the applicability of the privilege or protection.*" Rule 26(b)(2)(A), Federal Rules of Civil Procedure [italics added].

2

"relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter," the UBS defendants contend such material is relevant for discovery purposes under Rule 26(b)(1).

The court agrees that *factual or evidentiary* materials communicated by and between parties in a lawsuit meet the standard for being relevant for discovery purposes. As already expressed by the court in earlier orders, FRE 408 defines the limits of evidentiary admissibility, not what is relevant for discovery. Lawyers have long understood that the scope and breadth of discovery is almost invariably larger than admissibility. The mere fact that FRE 408 may limit how discoverable material is used as evidence, does not mean that the material is not discoverable. Hearsay and other plainly inadmissible forms of information are routinely discovered properly, as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Also as pointed out before, it cannot be disputed that a party's recitation of facts and evidence relating to a claim or defense in a lawsuit is the type of information that is "reasonably calculated to lead to the discovery of admissible evidence." Thus, the question here is not one of relevance, but whether there is some privilege or other basis for concluding that this type of relevant *factual and evidentiary* material is shielded from discovery.

Clearly, FRE 408 does not do it, any more than FRE 802 shields hearsay from discovery. In the alternative, plaintiffs and HealthSouth cite Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976 (6th Cir. 2003), for the proposition that there is a recognized "settlement privilege" that shields from discovery communications and documents exchanged or disclosed as part of the settlement negotiation process. Neither the Eleventh Circuit nor any other circuit court of appeals,

3

as far as this court can determine, has accepted the rationale and privilege recognized in Goodyear, and several district courts have rejected it. See In re Subpoena Issued to Commodity Futures Trading Commission, 370 F.Supp. 2d 201 (D.D.C. 2005); Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc., 2007 WL 963975 (N.D.Cal., 2007) (and cases cited therein).

Cases older than Goodyear also have rejected the idea of a federal settlement privilege, at least in the discovery (as distinct from evidentiary admissibility) context. See Oliver v. Committee for Re-Election of the President, 66 F.R.D. 553 (D.D.C., 1975). As the court in Oliver explained, FRE 501 ties the recognition of privileges to the common law, as modified by reason and experience. The Oliver court noted:

> Contrary to assertions by Mr. Strauss' counsel, Strauss' negotiations which led to a settlement of DNC v. McCord are not privileged communications. The usual view has been that the same rules of privilege apply to discovery as apply at trial. Wright & Miller § 2016; see also, Federal Rules of Evidence, Rule 1101(c) (effective July 1, 1975). In a federal question suit, the federal court recognizes those privileges which were recognized at common law. While offers of settlement (and presumably also negotiations which led to such offers) are clearly not admissible at trial for a number of public policy reasons, such negotiations do not fall within the confines of the privileges recognized at common law. See 8 Wigmore, Evidence, §§ 2210-2396 (McNaughton rev. 1961).

Id., at 556; see also Morse/Diesel, Inc. v. Trinity Industries, Inc., 142 F.R.D. 80 (S.D.N.Y. 1992) (FRE 408 does not create a "settlement privilege" against discovery, but discovery of settlement negotiations requires a "particularized showing" of need); Bennett v. La Pere, 112 F.R.D. 136 (D.R.I. 1986).

Another opinion by the Southern District of New York illustrates the line of demarcation between FRE 408 and discovery. In Bank Brussels Lambert v. Chase Manhattan Bank, N.A., 1996

4

WL 71507 (S.D.N.Y. 1996), the court rejected the idea that FRE 408 embodied a privilege against

*discovery* of settlement materials, saying:

> More importantly, Chase misperceives the policy underlying Rule 408. The rule is not designed to lock away settlement documents, forever shielding them from view by those not party to the agreement. While it is true that the rule seeks to encourage the settlement process, it accomplishes that purpose not by making the settlement information unavailable, but by limiting abusive use of positions taken during the process. The rule insures that offers of compromise will not have intrinsic evidentiary value. The rule recognizes that in the give and take of settlement negotiations offers and concessions are made which are inconsistent with the legal and factual positions maintained by the parties. The rule recognizes that parties will be discouraged from making settlement offers if those offers may be used as evidence at trial. The rule thus fosters non-judicial resolution of disputes because compromises made during the settlement process will not later surface to haunt the parties as substantive evidence. The policy behind Rule 408 thus does not require any special restriction on Rule 26 because the discovery rules do not affect admissibility.
>
> As the Advisory Committee makes clear, "the rule excludes only when the purpose is proving the validity or invalidity of the claim or its amount ...." Notes of Advisory Committee on 1972 Proposed Rules. In general, settlement documents will not be admissible on these issues because the party "may be motivated by a desire for peace rather than from any concession of weakness of position." Id. On the other hand, "evidence otherwise discoverable [will not be excluded] merely because it is presented in the course of compromise negotiations." Notes of Conference Committee, House Report No. 93-1597. The bottom line is that Rule 408 does not require any special modification of discovery decisions. The test under Rule 26 is not whether the information itself is admissible, but whether it "may lead to evidence admissible at trial." Securities and Exchange Comm'n v. Downe, No. 92 Civ. 4092, 1994 WL 23141 (S.D.N.Y. Jan. 27, 1994), at *6.

Id. at *3; see also NAACP Legal Defense Fund and Educational Fund, Inc. v. U.S. Department of

Justice, 612 F.Supp. 1143 (D.C.D.C., 1985) (FRE 408 "was never intended to be a broad discovery

privilege").

5

Citing In re Subpoena Issued to Commodity Futures Trading Commission, 370

F.Supp. 2d 201 (D.D.C. 2005), the Northern District of California concluded that a federal settlement

privilege cannot meet the exacting standards of Jaffe v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135

L.Ed.2d 337 (1996), and FRE 501 for the recognition of a new privilege. The court in Matsushita

Electric Industrial Co., Ltd. v. Mediatek, Inc., 2007 WL 963975 (N.D.Cal., 2007), identified at least

three reasons under Jaffe for doubting that such a privilege should be recognized:

> First, the court noted that while there is a public policy of promoting settlement
> disputes outside the judicial process, it was far from clear that a federal settlement
> privilege would result in an increased likelihood of settlements so substantial that it
> would justify an exception to the production of evidence in support of the
> truth-finding process. Id. at 212. This argument is buttressed by the fact that there
> is no evidence that the method taken by Rule 408 to protect settlement
> negotiations — limiting the admissibility of settlement discussions without limiting
> their disclosure in discovery — is insufficient to promote public policy of settling
> disputes outside the judicial process.
>
> Second, the court in In re Subpoena found that there is no "consensus" among the
> states as to the existence of a settlement privilege. Id. at 210. Unlike the situation
> in Jaffe, where "all 50 states and the District of Columbia" had enacted into law a
> form of psychotherapist privilege, there is no such foundation for a "settlement
> privilege" under state law. Jaffe, 518 U.S. 1, 116 S. Ct. 1923, 135 L. Ed. 2d 337.
>
> Finally, it is clear that when Congress approved Rule 408 to promote settlements, it
> chose to do so by limiting admissibility — and not by limiting discovery. See In re
> Subpoena, 370 F.Supp. 2d at 211. Indeed, it specifically provided that settlement
> negotiations can be admitted for certain purposes. Accordingly, any federal
> settlement privilege is contrary to the enactment approved by the legislature.

Id. at *5; but see In re RDM Sports Group, Inc., 277 B.R. 415 (Bkrtcy. N.D. Ga., 2002) (finding

settlement privilege recognized under Jaffe and FRE 501). The point is worth noting that, if

Congress had intended FRE 408 to create a privilege against *discovery* of settlement materials, it

would make no sense for FRE 408 to recognize the use and admissibility of them for certain purposes. Rather, because settlement materials *may* be used for certain purposes, discovery of them seems proper.

As pointed out in In re Subpoena, *supra,* federal courts are hesitant to create new testimonial or evidentiary privileges because they contravene the general policy of favoring the search for truth. New privileges are not to be "lightly created or expansively construed," United States v Nixon, 418 U.S. 683, 710 (1974), because doing so necessarily removes from consideration a source of potential evidence that might shed light on the truth. Thus, under FRE 501 and Jaffe, a rigorous analysis must be undertaken to determine whether the need for the privilege clearly outweighs its cost to the truth-finding function of litigation.

The court is unpersuaded that the essential rationale for a settlement privilege — the concern that opening such exchanged settlement materials to discovery by third parties will chill settlement negotiations — is truly valid. Keeping in mind that FRE 408 limits the use of such materials as *evidence*, the question is whether the mere *discovery* of those materials by a third-party litigant significantly burdens the settlement process. The fact that settlement materials can be discovered does not mean that they can be used as evidence, thus limiting their value simply to revealing information about facts and sources of evidence for further discovery. Of course, it is clear that pre-existing facts and documents — those that existed prior to and unrelated to the settlement negotiations themselves — do not become "privileged' merely because they may be discussed or exchanged during settlement negotiations. The underlying *facts* of the lawsuit, and the evidence bearing on those facts, are almost never privileged. On the other hand, when a litigant creates a

document to be given to an adversary during settlement negotiations[2] (with no assurance that an actual settlement will result), it is obvious that that party has already concluded that the benefits of the potential settlement outweigh the potential harm from the disclosure. Put another way, the disclosing party has chosen to proceed with the settlement negotiations even at the price of having to make certain factual disclosures. It is unlikely that that balance would be altered significantly merely because another adversary might also gain access to (but cannot use as evidence) the disclosures already made to the adversary with whom he is negotiating. The court recognizes that disclosing facts to one adversary is not necessarily the same as disclosing them to another. Adversaries are not fungible. Nonetheless, a decision to make certain disclosures to an existing adversary during settlement discussions suggests that the fear of making the disclosures is not so great as to chill the settlement process. At the very least, the court can say this: Given the law's hesitancy to create new privileges and its narrow construction of existing privileges in favor of searching for the truth, the plaintiffs have not carried the difficult burden under Rule 501 and Jaffe of establishing that a federal settlement privilege should be recognized.

The court also recognizes that confidential disclosures to a mediator, *but not the adversary*, during settlement discussions requires a different outcome. Although the facts of the lawsuit are not privileged, whether communicated to a mediator or not, a litigant's assessment of the strengths and weaknesses of his case still partakes of the attorney work-product privilege, even when communicated to a neutral mediator. When a party prepares a confidential settlement memorandum intended only for the neutral mediator, he has taken steps to keep the disclosure out of the hands of

---

[2] It bears repeating that any work-product privilege that may be implicated by the creation of documents as part of the settlement process is waived when the documents are actually and intentionally delivered to the adversary.

8

his adversary, and, therefore, it cannot be said that he has made the active calculation that the benefits of mediation outweigh the dangers of disclosure to an adversary. There are reasons for respecting the privileged nature of disclosures made *only* to the neutral mediator as the work product privilege is not waived by disclosures to third parties unassociated with adversaries. See Westinghouse Electric Corp. v. Republic of Philippines, 951 F.2d 1414, 1428 (3rd Cir. 1991) ("Because the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine. Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information."). Once the disclosures are communicated to the adversary, however, the privilege is lost, subject only to the evidentiary limits of Rule 408.

Concluding that there is no federal settlement privilege[3] against discovery, the court finds, therefore, that the UBS defendants' motion to compel is due to be and here is GRANTED, as follows:

1. Insofar as plaintiffs or HealthSouth have disclosed or exchanged, among themselves or with anyone, pre-existing documents or facts about the claims or defenses in this action — that is, facts or documents in the underlying lawsuits not created solely for purposes of settlement discussions, but existing as evidence relating to the claims or defenses in the lawsuits — such documents and facts are not privileged and must be disclosed in response to an appropriate discovery request.

---

[3] The court has no occasion to consider whether Alabama state law recognizes such a privilege because the claims in the instant case are based on federal, not state, law. See FRE 501.

2. Insofar as plaintiffs or HealthSouth prepared documents, memoranda, fact statements, or other papers for settlement discussion purposes and such were *actually* exchanged among themselves, or with governmental agencies or other persons or entities then taking an adversarial position to them during the settlement discussion process, such documents, memoranda, fact statements, or other papers are not privileged (either by the work-product privilege or any other), and must be disclosed in response to an appropriate discovery request.

3. Insofar as plaintiffs or HealthSouth prepared documents, memoranda, fact statements, or other papers for settlement discussion purposes and such were disclosed *only* to a neutral mediator, and not disclosed to an agency, person, or entity then taking an adversarial position to them, such documents remain privileged under the attorney work-product privilege and need not be produced in response to a discovery request.

4. Insofar as plaintiffs or HealthSouth continue to assert that documents are privileged under the foregoing paragraph (i.e., were disclosed only to a neutral mediator), they shall identify such documents by serving on opposing counsel an appropriate privilege log as required by FRCP 26(b)(5)(A), within fifteen (15) days after this Order.

DONE this 17th day of August, 2007.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE

10

Exhibit B

Declaration of John J. Kavanagh III

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In Re HealthSouth Securities Litigation ) ) ) ) | Master File No. CV-03-BE-1500S U.S. District Court for the N.D. Al. |
| ) ) STEPTOE & JOHNSON LLP ) 1330 Connecticut Ave. N.W. ) Washington, D.C. 20036 ) ) ) Movant, ) ) v. ) ) ) UBS AG, UBS SECURITIES LLC, ) BENJAMIN D. LORELLO, WILLIAM ) McGAHAN, and HOWARD CAPEK ) Respondents. ) ) | Misc. No. _____ |

## DECLARATION OF JOHN J. KAVANAGH III
## IN SUPPORT OF STEPTOE & JOHNSON LLP'S MOTION TO QUASH SUBPOENA
## FOR ATTORNEY INTERVIEW MEMORANDA

I, John J. Kavanagh III, declare as follows:

1.     I am an attorney, licensed to practice law in the District of Columbia, employed by the law firm of Steptoe & Johnson LLP ("Steptoe").

2.     I am submitting this declaration in support of Steptoe's Motion to Quash Subpoena for Attorney Interview Memoranda in the above-captioned matter. I have personal knowledge of the matters set forth herein.

3.     In March 2003, Steptoe was retained by Michael D. Martin, a former Chief Financial Officer of HealthSouth Corporation, to represent him in connection with the government's criminal and civil investigations into the inflation of corporate earnings at HealthSouth,

1

and also to represent him in anticipated civil litigation arising out of the HealthSouth matter. Mr. Martin's lead lawyers at Steptoe were Mark Hulkower, who headed the criminal defense, and Robert Fleishman, who headed the defense of the SEC's investigation and the related civil suits. I worked with Mr. Hulkower and Mr. Fleishman in defending Mr. Martin in both the criminal and civil matters.

4.      In defending Mr. Martin, we worked with John Cooper, of the Birmingham, Alabama law firm of Sirote & Permutt, which also represented Mr. Martin in these matters.

5.      With Steptoe's counsel and representation, Mr. Martin entered into a plea and cooperation agreement with the United States Department of Justice and the United States Attorney's Office for the Northern District of Alabama. Pursuant to that agreement, Mr. Martin provided extensive cooperation with the government's investigation and prosecution of the HealthSouth matter.

6.      On numerous occasions, Mr. Martin was interviewed by representatives of various government agencies including the FBI, the SEC, the U.S. Department of Justice (Criminal Fraud Section), and the United States Attorney's Offices for the Northern and Middle Districts of Alabama. I, along with other attorneys, represented Mr. Martin at these interview sessions.

7.      These interviews with the government, which aided the government's investigation and prosecution of numerous other former HealthSouth officials including HealthSouth's former Chief Executive Officer, Richard Scrushy, were critically important to Mr. Martin's criminal defense. Through his cooperation with the government's investigation and prosecution of others, Mr. Martin earned a motion from the government seeking a downward departure at his sentencing under the Sentencing Guidelines.

8.    Having a recorded understanding of the information exchanged at these inter-views was also important to Steptoe's representation of Mr. Martin in the SEC investigation and the anticipated civil lawsuits.

9.    I am familiar with the subpoena for documents attached as Exhibit A to Steptoe's Motion to Quash.  This third-party subpoena, issued to Steptoe by counsel for UBS AG, UBS Securities LLC, Benjamin D. Lorello, William McGahan, and Howard Capek (collectively, "UBS" or the "UBS Respondents") in relation to civil litigation styled as, *In re HealthSouth Securities Litigation*, Master File No. CV-03-BE-1500S (N.D. Ala., S'ern Div.), seeks to compel the production of documents from Steptoe related to its representation of Mr. Martin in the HealthSouth criminal prosecution and related civil litigation.

10.    Requests 6 and 7 attached to UBS' document subpoena demand the production of all relevant documents, including attorney notes, relating to two government interviews of Mr. Martin: one on May 2, 2003, and one on or about February 9 to 13, 2004.

11.    Along with other attorneys, I represented Mr. Martin at each of these interview sessions.  At each session—one on May 2, 2003, and one on February 9, 2004—I took notes of the interview.  After each session, I drafted a memorandum to Mr. Fleishman, Mr. Hulkower, and Mr. Cooper, reflecting my notes, observations and summary of the interview.  After putting my notes and recollections into memoranda form, I discarded the handwritten notes.

12.    At the time of each of these interviews, and at the time that I wrote my memo-randa, Mr. Martin's criminal sentencing was still pending.  Mr. Martin was first sentenced in June 2004.

3

13. At the time of the May 2, 2003 interview, Mr. Martin was also under investigation by the SEC. At the time of the February 9, 2004 interview, Mr. Martin had been sued by the SEC in relation to the HealthSouth matter.

14. At the time of each of these interviews, Mr. Martin also was an anticipated or current defendant in civil lawsuits brought by HealthSouth's investors.

15. Each of these interviews was conducted in connection with, and in anticipation of, the government's prosecution of other former HealthSouth officials, including former Health-South CEO Richard Scrushy, in connection with the HealthSouth fraud.

16. My memorandum regarding the May 2, 2003 interview is 18 pages long. It is headed, "**CONFIDENTIAL-ATTORNEY WORK PRODUCT / DRAFT**." It is addressed to File, Bob Fleishman, Mark Hulkower, and John Cooper, Sirote & Permutt. The "Re" line reads, "Michael Martin/Healthsouth-May2 Meeting with AUSA, DOJ, and FBI." Because the memorandum as saved in Microsoft Word contains an automatically updating date field, it no longer reflects the original date of the memo. The first sentence of the memo reads, "This memorandum reports on the May 2, 2003 meeting between Michael Martin (MM) and government officials regarding financial fraud at Healthsouth." After listing the interview attendees for the FBI, the U.S. Attorney's Office for the Northern District of Alabama, and the Department of Justice, the first paragraph states in relevant part, "Mark Hulkower and John Kavanagh represented MM in the meeting."

17. My memorandum regarding the February 9, 2004 interview is 15 pages long. It is headed, "DRAFT / Privileged and Confidential/Attorney Work Product." It is dated March 5, 2004, and is addressed to Mark Hulkower, Bob Fleishman, and John Cooper, Sirote & Permutt. The "Re" line reads, "Notes of Meeting with SEC on Monday February 9, 2004 in Birmingham."

4

The first sentence reads, "On Monday February 9, 2004, Mike Martin (MM) met with attorneys from the SEC in the U.S. Attorney's office in Birmingham." After listing the interview attendees for the SEC, the U.S. Attorney's Office for the Northern District of Alabama, and the FBI, the first paragraph states, "Mark Hulkower (MH) represented MM and was joined by John Cooper and John Kavanagh, who took notes. This is not a verbatim transcript, but, rather, a summary of the interview."

18.    Both of these memoranda reflect my notes, thoughts, recollections, and mental impressions of the interviews. They are not verbatim transcriptions, nor are they complete accounts of everything said in the interviews. Rather, in the process of taking notes and later composing these memoranda based on my notes, I relied on my impressions and recollections of the questions, answers, and topics discussed, and my assessment of what was important to the case.

19.    These two memoranda are the only documents in Steptoe's possession, custody or control that are responsive to Requests No. 6 and 7 of the UBS subpoena.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 6, 2008.

John J. Kavanagh III

5

Exhibit C

Proposed Order

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re HealthSouth Securities Litigation   ) <br> ) <br> ) <br> ) <br> ) <br> STEPTOE & JOHNSON LLP   ) <br> 1330 Connecticut Ave. N.W.   ) <br> Washington, D.C.  20036   ) <br> ) <br> Movant,   ) <br> ) <br> v.   ) <br> ) <br> UBS AG, UBS SECURITIES LLC,   ) <br> BENJAMIN D. LORELLO, WILLIAM   ) <br> McGAHAN, and HOWARD CAPEK   ) <br> ) <br> Respondents.   ) | Master File No. CV-03-BE-1500S <br> U.S. District Court for the N.D. Al. <br><br><br><br><br><br> Misc. No. _____ |

### ORDER

Having considered Steptoe & Johnson LLP's motion to quash UBS's third party subpoena to the extent that the subpoena seeks Steptoe's attorney memoranda concerning interviews between its client Michael Martin and the government, and having further considered any opposition thereto, any argument thereon, and the pertinent points and authorities, IT IS NOW HEREBY ORDERED THAT:

1.    The Motion to Quash Subpoena for Attorney Interview Memoranda is GRANTED; and

2.    UBS's third party document subpoena dated February 21, 2008 and directed to Steptoe & Johnson LLP is QUASHED to the extent that it seeks any notes or memoranda prepared by Steptoe attorneys regarding interviews of their client, Mr. Martin.

SO ORDERED.

_____
United States District Judge

Date: _____
Washington, D.C.

Copies to:

Mark J. Hulkower
Bruce C. Bishop
Steptoe & Johnson LLP
1300 Connecticut Ave. N.W.
Washington, D.C.  20036
(202) 429-3000
*Counsel for Movant Steptoe & Johnson LLP*

Julia M. Jordan
Sullivan & Cromwell LLP
1701 Pennsylvania Ave. N.W.
Washington, D.C.  20006
(202) 956-7500
*Counsel for the UBS Respondents*