UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re HealthSouth Corp. Securities Litig. <br><br> **STEPTOE & JOHNSON LLP,** <br><br> Movant, <br><br> v. <br><br> **UBS AG, et al.,** <br><br> Respondents. | No. 08-mc-116 (JDB) |

## MEMORANDUM OPINION

On February 21, 2008, UBS AG, UBS Securities LLC, Benjamin D. Lorello, William McGahan, and Howard Capek (collectively, "UBS") issued a third-party subpoena to Steptoe & Johnson LLP ("Steptoe"). In relevant part, UBS seeks production of sections of attorney memoranda summarizing the Federal Bureau of Investigation ("FBI") interviews of Michael D. Martin, Steptoe's former client, on May 2, 2003, and February 9, 2004. Steptoe has now moved to quash the subpoena, and UBS has moved to compel a response. Upon careful consideration of the motion and the parties' memoranda, the applicable law, the entire record, and an in camera review of the relevant materials, the Court will deny Steptoe's motion to quash and will grant UBS's motion to compel a response.

## BACKGROUND

Steptoe began representing Michael D. Martin, a former Chief Financial Officer of HealthSouth Corporation, in March 2003. Steptoe Mot. to Quash at 2. At that time, the United States was pursuing criminal and civil investigations into an accounting fraud at HealthSouth that

artificially inflated corporate earnings.  Id.  Shortly after federal agents raided HealthSouth's headquarters, Martin entered a guilty plea for participating in the conspiracy, in connection with which he entered into a cooperation agreement with the government "under which he agreed to assist the government's investigation and prosecution in connection with the HealthSouth matter."  Id. (citing Decl. of John J. Kavanagh III ("Kavanagh Decl.") ¶5).  Steptoe thereafter represented Martin at several debriefing interviews that were conducted by federal agents.

Of particular importance here are two debriefing sessions held on May 2, 2003, and February 9, 2004.  Martin, four FBI agents, three Department of Justice representatives, and Martin's attorneys from Steptoe attended these interviews, and an FBI agent and a Steptoe attorney each separately took notes of the questions and answers.  See id. at 2, 9; Steptoe Reply at 20.  The FBI later translated its notes into interview reports called "FBI 302s," and the Steptoe attorney translated his notes into two memoranda summarizing the interviews.

UBS argues that "the participants in the HealthSouth fraud have repeatedly acknowledged" that "a major goal of their conspiracy was to prevent outsiders -- such as banks like UBS -- from discovering the fraud."  UBS Response at 2.  Nevertheless, HealthSouth bondholders and shareholders ("plaintiffs") have filed securities class actions against UBS, seeking what UBS claims to be "billions of dollars in damages."  Id.  Although Martin was originally named as a defendant in the civil suit, he cooperated with the plaintiffs and informed them that he had disclosed aspects of the accounting fraud to two UBS employees in 1999 and 2001.  Id. at 3.  When the plaintiffs amended their complaint to incorporate these allegations, Martin was voluntarily dismissed from the lawsuit.  Id.  UBS argues that the civil litigation claims rest on Martin's testimony, and that he is "the only witness who has testified to personal

knowledge that anyone from UBS was aware of any aspect of the HealthSouth accounting fraud." UBS Reply at 16. Even the magistrate judge handling discovery issues in the civil litigation has stated that "Martin is a critical witness . . . with respect to UBS's potential liability." March 4, 2008 Discovery Order No. 9 at 2.

At a recent deposition of Martin held on February 11-15, 2008, UBS challenged Martin's testimony regarding the knowledge of UBS employees about the accounting fraud at HealthSouth. In questioning Martin on this topic, UBS relied on the FBI 302s from May 2, 2003, and February 9, 2004. When Martin was confronted with these questions, he continually denied having made several statements that were recorded in the FBI's reports, and he openly doubted the accuracy of the FBI 302s. See Feb. 14, 2008 Dep. of Michael Martin at 1053-56, 1079-80, 1114-15; Feb. 15, 2008 Dep. of Michael Martin at 1507-10. Specifically, he denied having made certain statements relating to three UBS employees -- McGahan, Lorello, and Capek. When UBS asked Martin if he had reviewed Steptoe's memoranda from these same debriefing sessions, Martin said he had reviewed the memorandum from the May 2, 2003 meeting in the summer of 2003 and had found it accurately recorded what he said. See Feb. 14, 2008 Dep. of Michael Martin at 1085-89. He also stated that he had looked at other Steptoe notes, but he could not recall which interviews they recorded. See id. at 1090. On numerous occasions throughout his deposition, Martin expressed confidence in Steptoe's interview notes as being accurate with his testimony -- in contrast to portions of the FBI 302s, which he asserted were inaccurate.

Because Martin indicated Steptoe's notes contained information that was contradictory to the FBI 302s but consistent with his testimony, UBS asked that Steptoe's interview notes be turned over. On February 21, 2008, UBS issued a third-party subpoena to Steptoe requesting any

documents from the May 2, 2003 and the February 9, 2004 interviews of Martin by the FBI, including any Steptoe notes concerning statements relating to any of the UBS defendants. The instructions state that "the personal thoughts or impressions of an attorney" and any "information that does not relate to UBS" may be redacted. Schedule A Instructions ¶¶ 15-16. UBS therefore argues that its subpoena is "an exceedingly narrow information request seeking precisely these critical documents that Martin himself says [are] the only accurate documentary record of his statements to the FBI more than four years ago, when under a legal duty to be truthful and accurate." UBS Response at 3. In response, Steptoe argues that the responsive attorney memoranda, in their entirety, are protected opinion work product. Steptoe Mot. to Quash at 4. Steptoe further argues that even if the memoranda were fact work product, UBS has not made a sufficient showing to overcome that privilege and require production.

## LEGAL STANDARD

At the heart of the parties' dispute lies the work-product doctrine, which protects from discovery written material prepared in anticipation of litigation or for trial. The protection for attorney work product was first articulated in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), and has been codified in Fed. R. Civ. P. 26(b)(3). Under Rule 26(b)(3), "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial" unless "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." If the relevant work product contains only non-privileged facts and a party satisfies the substantial need and undue hardship elements, a court may order discovery of the relevant materials, known as fact work product.

But a court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Such mental impressions, judgments, and thought processes of counsel constitute opinion work product, which "receives almost absolute protection from discovery." In re Vitamins Antitrust Litig., 211 F.R.D. 1, 4 (D.D.C. 2002). To obtain discovery of opinion work product, a party must show "extraordinary justification." In re Sealed Case, 676 F.2d 793, 810 (D.C. Cir. 1982) (citing Hickman, 329 U.S. at 513, and Upjohn Co. v. United States, 449 U.S. 383, 401 (1981) ("such work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship")). The law of work-product privilege is therefore a "two-tiered structure -- qualified protection for 'fact' work product and more absolute protection for 'opinion' work product." Id. at 811.

## DISCUSSION

**I.     Attorney Memoranda of Witness Statements May Contain Fact Work Product**

Primarily relying on Hickman and Upjohn, Steptoe argues that all attorney memoranda of a witness's oral statements are opinion work product deserving of the utmost protection from discovery. In Hickman, the foundational case for the work-product doctrine, the plaintiff sought to discover memoranda prepared by defense counsel regarding defense interviews of numerous witnesses. 329 U.S. at 497-499. Explaining the importance of privacy in preparing a client's case, the Supreme Court stated that an attorney should be free to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." Id. at 510-11. In Upjohn, the IRS also sought to discover memoranda prepared by a company's general counsel regarding interviews the

company conducted of its officers and employees.  See 449 U.S. at 400 n.8 (noting that the attorney described his notes as containing "what [he] considered to be the important questions, the substance of the responses to them, [his] beliefs as to the importance of these, [his] beliefs as to how they related to the inquiry, [his] thoughts as to how they related to other questions," and in some instances "other questions that [he] would have to ask or things that [he] needed to find elsewhere").  Again, the Supreme Court clearly stated that "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes."  Id. at 399-400.

As the work-product doctrine developed, courts were mainly concerned with protecting counsel's own interviews from being divulged to an adversary in the same litigation.  In conducting an interview, an attorney shapes the questions that are asked, and there is a danger that the questioning alone may reveal an attorney's theory or thought processes.  There is also the concern that an attorney's notes of an interview may include his reactions to certain responses and his thoughts for future development of the case.  But these concerns are not present in all situations.  For example, in In re John Doe Corp., 675 F.2d 482 (2d Cir. 1982), after an in camera review of attorney notes from an interview, the Second Circuit ordered their production.  Because "[t]he notes recite in a paraphrased, abbreviated form, statements by Employee A relating to events surrounding the payment," the court noted that "their production will not trench upon any substantial interest protected by the work-product immunity."  Id. at 493.  The court further explained that to "the extent that the statements imply the attorney's questions from which inferences might be drawn as to his thinking, those inferences merely disclose the concerns a layman would have as well as a lawyer in these particular circumstances, and in no way reveal

anything worthy of the description 'legal theory.'"  Id.

Recognizing that the principles underlying the work-product doctrine should not encompass all attorney memoranda of interviews, the D.C. Circuit has specifically held that "[w]here the context suggests that the lawyer has not sharply focused or weeded the materials, the ordinary Rule 26(b)(3) standard should apply."  In re Sealed Case, 124 F.3d 230, 236 (D.C. Cir. 1997) ("Sealed Case 1997"), rev'd on other grounds, 524 U.S. 399 (1998).[1]  In reaching this conclusion the court analyzed the Supreme Court's opinion in Upjohn and determined that the "reasoning seems to presuppose that [factual] notes are analytically divisible" from opinion work product.  Id. at 236.  The interview notes sought by the government in Sealed Case 1997 related to a preliminary interview that was initiated by the client and contained a wide-ranging discourse.  Noting that this situation was distinguishable from previous cases where an adverse party sought interview materials that revealed a lawyer's focus, the court determined that the fact work product elements of interview memoranda can be produced when the Rule 26(b)(3) standard is met.  Id. If an interview memorandum also contains elements of opinion work product, those sections should be redacted before the materials are produced.

The D.C. Circuit has thus rejected the very argument advanced here by Steptoe,

---

[1] Steptoe argues that an earlier D.C. Circuit case, United States v. Paxson, 861 F.2d 730, 735 (D.C. Cir. 1988), is nevertheless analogous to the current situation.  In Paxson, the defendant was not entitled to the notes taken by a cooperating witness's counsel during an interview conducted by the government.  Steptoe therefore argues that attorney memoranda recording government interviews should be protected even if the attorney did not focus or weed the materials.  However, in Paxson it was unchallenged that the interview notes "contained 'assessments, thought processes, analyses and strategy of counsel,' and reflected his judgment on how best to advise and protect the interest of his client."  Id. at 735.  In this important regard, Paxson is plainly distinguishable from the instant case.

explaining that the proposition "that a lawyer's interview notes are always opinion work product" simply "goes too far." Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1307-08 (D.C. Cir. 1997). "[P]urely factual material embedded in attorney notes may not deserve the super-protection afforded to a lawyer's mental impressions." Id. at 1308; see also In re Vitamins Antitrust Litig., 211 F.R.D. at 4-5 (relying on Sealed Case 1997, 124 F.3d 236-37, to conclude that interview memoranda were fact work product).

Steptoe's only response to this line of cases is that they should be deemed undermined by the Supreme Court's reversal of Sealed Case 1997 on other grounds in Swidler & Berlin v. United States, 524 U.S. 399 (1998). In Swidler, the Supreme Court reversed Sealed Case 1997 on grounds of attorney-client privilege, holding that the privilege survives the death of the client. The Court did not reach, however, the D.C. Circuit's analysis of work-product privilege. 524 U.S. at 403 ("Because we sustain the claim of attorney-client privilege, we do not reach the claim of work-product privilege."). Therefore, the work product discussion in Sealed Case 1997 remains controlling precedent for this Court. See Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 60 (D.D.C. 2004) (stating that the reversal of a D.C. Circuit opinion on one ground could not be read as a criticism of an entirely different issue in the case); see also Safe Extension, Inc. v. FAA, 509 F.3d 593, 604 (D.C. Cir. 2007) (relying on a prior decision that was reversed on other grounds by the Supreme Court); United States v. Mitchell, 216 F.3d 1126, 1131-32 (D.C. Cir. 2000) (same); accord Stroman Realty, Inc. v. Wercinski, 513 F.3d 476, 489 (5th Cir. 2008) (stating that if a previous Fifth Circuit decision remained viable on one issue, the "court would be bound notwithstanding the Supreme Court's reversal of the decision on other grounds") (citing Cent. Pines Land Co. v. United States, 274 F.3d 881, 894 (5th Cir.2001) (stating that Fifth

Circuit cases overruled on other grounds by the Supreme Court remain binding authority)).

In any event, it is clear that Upjohn's reasoning suggests factual work product may be embedded in attorney memoranda of witness statements. Steptoe goes too far in arguing that all attorney memoranda recording oral statements of clients or witnesses must be opinion work product. To so hold would inappropriately immunize parties and permit them to hide relevant non-privileged facts contained in those memoranda -- a concept contrary to the vitality of the adversary system.

## II.    Steptoe's Memoranda Primarily Constitute Fact Work Product

The Court is cognizant of the strong concerns that underlie the protection given to attorney memoranda of witness interviews, but those concerns simply are not present here. Steptoe has not sharply focused the materials at issue, and indeed has failed to focus on the relevant considerations regarding the materials at all. As Martin testified at his deposition, "the agenda of the interview[s] was set by the FBI." Feb. 14, 2008 Dep. of Michael Martin at 1084. Steptoe attorneys were merely observers of the interviews, in which Martin had agreed to cooperate and speak truthfully. The Steptoe attorneys did not shape the topics that were covered and did not frame the questions that were asked. Moreover, as Steptoe admits, these documents are summaries of the interviews that "largely take the form of questions asked and answers given." Steptoe Reply at 22. The memoranda merely describe the facts as they occurred so that Steptoe would have "a recorded understanding of the information exchanged at these interviews." Kavanagh Decl. ¶ 8.

Because Steptoe neither crafted nor asked the questions and because the memoranda contain complete summaries of the interviews, indicating Steptoe did not carefully weed the

material in any manner that would reveal attorney mental processes, the Court concludes that these documents are primarily fact work product. Indeed, these memoranda are nearly verbatim transcripts of the FBI's questions and Martin's answers -- complete with certain statements contained in quotation marks. See In re Vitamins Antitrust Litig., 211 F.R.D. at 5 (upholding the Special Master's conclusion that interview memoranda "were largely, if not wholly, fact work product based on the parties' own description of the materials as counsel's attempts to record questions and responses as accurately and completely as possible"); SEC v. Thrasher, 1995 WL 456402, at *10 (S.D.N.Y. Aug. 2, 1995) (affirming the magistrate judge's determination that attorney interview notes consisted of "'abbreviated recapitulations' of what a witness had said during an interview -- sometimes marked by quotations or described as summaries of a proffer by the witness -- and thus constitute[d] factual work product subject to disclosure under Rule 26(b)(3)").

## III.     Application of the Rule 26(b)(3) Standard

Because the Steptoe memoranda are largely fact work product, the question remains as to whether UBS has made a sufficient showing to justify their production. Under Rule 26(b)(3) then, has UBS shown a substantial need for the memoranda plus the inability to obtain their substantial equivalent without undue hardship?[2]

---

[2]Steptoe argues that the Court should deny the motion to compel because the attorney memoranda constitute inadmissible hearsay -- a conclusion that UBS vehemently contests. Steptoe posits that if any content from the memoranda could be used to impeach Martin, UBS would have to call a Steptoe attorney to the stand to do so. Based on this prospect alone, Steptoe asserts that the Court should not order production of the documents. However, Steptoe is jumping ahead too far. This Court is faced with an issue of discovery under Rule 26, and Steptoe cites no law to support the proposition that admissibility is necessary to conclude that the Rule 26 standard has been met. To the contrary, well-established law dictates that "a party may discover information which is not admissible at trial if such information will have some probable effect on

Martin's testimony undoubtedly goes to the heart of the plaintiffs' case against UBS.  His allegations are central to establishing that UBS employees were aware of the accounting fraud at HealthSouth, and he is apparently the only witness who will so testify.  Notwithstanding the importance of Martin's testimony, Steptoe argues that UBS has not satisfied the Rule 26 standard to obtain the memoranda because there are other sources that reveal Martin's testimony from the May and February interviews.  Namely, Steptoe points out that UBS already possesses the FBI 302s from these interviews and that in a lengthy deposition UBS already examined Martin using the FBI documents.  Pointing to the decision in Vinson & Elkins, Steptoe argues that UBS is merely seeking information "to confirm from Mr. Martin's lawyers what it already knows from other sources."  Steptoe Mot. to Quash at 9.  In Vinson & Elkins, the D.C. Circuit explained that the desire to obtain corroborating evidence would rarely satisfy the Rule 26 test because "by definition, a party seeking corroborative evidence has already found a way to get the same information."  124 F.3d at 1308.

But this case is clearly distinguishable from Vinson & Elkins, because UBS is not simply seeking corroborating evidence.  UBS is in fact seeking evidence that Martin says is contradictory to the FBI 302s.  When Martin was confronted with information from the May 2, 2003 FBI 302 regarding his testimony relating to Gahan and Lorello, he insisted the FBI documents were inaccurate and had not correctly recorded his testimony.  In denying the statements attributed to him in the FBI 302, Martin indicated he had reviewed Steptoe's memorandum from the same occasion, made no changes to the document, and deemed it to be

---

the organization and presentation of the moving party's case."  Smith v. Schlesinger, 513 F.2d 462, 473 (D.C. Cir. 1975).  Steptoe's speculation about how UBS may use the memoranda thus cannot shield the documents from discovery.

consistent with his testimony.  And when Martin was confronted with information recorded in the February 9, 2004 FBI 302 regarding his testimony relating to Capek, he again insisted the FBI's document was inaccurate.  Martin therefore testified that the FBI 302s contain false information in several places and that, to the contrary, Steptoe's memoranda contain truthful information that is contradictory to the FBI 302s.  See UBS Reply at 18 (arguing that "far from being corroborative, Martin himself declared that the Memoranda are accurate and inconsistent with the documentary record in this case").

     For the narrow, specific areas that are in dispute, the Court finds that UBS has demonstrated a substantial need for the Steptoe memoranda.  See In re John Doe Corp., 675 F.2d at 492 (determining that the government had demonstrated a substantial need for interview memoranda that "may be relevant simply for the fact they were made because they may tend to prove what Doe Corp. knew and when it knew it").  UBS has a substantial need to know whether and when Martin implicated UBS employees and how he did so.  Although UBS already has access to the FBI 302s from May and February, Martin has testified that the FBI documents are inaccurate and that Steptoe's memoranda are accurate.  See UBS Reply at 5 (stating that "[t]here is no dispute that no other document exists that Martin reviewed in 2003 and adopted as accurately recording what he told the DOJ and FBI about UBS at that critical time before he first met with Plaintiffs' counsel").  UBS therefore cannot obtain their substantial equivalent without undue hardship.  Moreover, UBS "has specifically limited its request to only those portions of Steptoe's notes that relate to the statements that Martin claims were mischaracterized (or misremembered) by the FBI," and the Court will only order the production of this subset of

material from the Steptoe memoranda.  UBS Response at 18.[3]  The Court has concluded, based on its in camera review and as reflected in the order issued herewith, that less than two total pages of the thirty-three pages of memoranda must be produced.

## CONCLUSION

For the reasons stated above, the Court will deny Steptoe's motion to quash and will grant UBS's motion to compel.  From Steptoe's memorandum of the May 2, 2003 interview, Steptoe shall produce the sections relating to Martin's disputed statements about McGahan and Lorello, as specified in the accompanying order.  From Steptoe's memorandum of the February 9, 2004 interview, Steptoe shall produce the sections relating to Martin's disputed statements about Capek, as specified in the accompanying order.

/s/
JOHN D. BATES
United States District Judge

Dated: April 29, 2008

---

[3] In UBS's motion to compel, UBS appears to narrow its request from the language originally included in the February 21, 2008 subpoena.  To the extent that UBS is seeking all sections of the memoranda regarding UBS, beyond the sections relating to the disputed areas of the FBI 302s, the Court determines that UBS has not satisfied the Rule 26 standard.  For any areas that are not disputed by Martin, UBS's request appears to be nothing more than an impermissible desire to obtain corroborating material.  See Vinson & Elkins, 124 F.3d at 1308.